OSGOOD, *Administrator de bonis non, appellant, versus*
JOSEPH P. LOVERING.

A testator is presumed to use words in their ordinary meaning, if such a construction would not be in conflict with his manifest intention.

The use of the word "children" does not necessarily, and under all circumstances, exclude a grandchild.

But a grandchild will not be considered as included, unless such intention is clearly exhibited, or unless the word appears to have been used as synonymous with issue or descendants.

A testator, having five children, after making certain legacies, bequeathed the residue of his personal property; viz: to four of his children, one fifth part each, and of the other fifth, one half to a daughter, and the other half to a son of that daughter, to be paid to him when twenty-one years of age *with interest.*

Afterwards by a codicil, he bequeathed, "for the benefit of his family," for the term of ten years, all that residue which, in the will, he had directed to be divided "among his children," after which term it was to be divided as required by the original will. *Held,* that the change made by the codicil was merely to postpone the distribution for the term of ten years; and, that therefore, the interest upon the grandson's legacy was not to commence till the expiration of that term.

APPEAL from a decree of the JUDGE OF PROBATE.

The testator devised and bequeathed to his wife the use of all his real and personal estate, while she should remain his widow. He then bequeathed to her and to three of his five children the sum of five hundred dollars each. He then devised and bequeathed to his son Daniel all his real and personal estate after the decease or marriage of his widow; then bequeathed the residue of his personal estate, goods and chattels, one fifth part each to four of his children, and the other fifth as follows, viz: one half of it to his daughter, Phebe Lovering, and the other half of it to his grandson Joseph P. Lovering, to be paid to him with interest, when he shall be twenty-one years of age.

Afterwards, he executed a codicil containing as follows: "I bequeath for the benefit of my family, for the space of ten years from my death, all the residue of my personal property after my funeral charges and just debts are paid, which in my last will and testament I have directed to be divided

among my several children, after which time it shall be divided as specified in my last will and testament."

The will having been approved, the Judge of Probate decreed that interest on the legacy to said grandson should be allowed from the time of the testator's death. From that decree the administrator *de bonis non* appealed.

*J. Appleton*, for the appellant.

By the original will, the legacies, referred to in the codicil, were placed on an *equal* footing.

When the *residue* was ascertained, the division was to be made. The children being of full age, were entitled *presently* to their fraction.

The grandson being a minor, was not to receive his share till he should arrive at years of manhood ; consequently he should receive interest, to be on an equality with the other legatees.

So the case stands under the original will.

By the codicil, the *use* of this residue, bequeathed to the children, is given for the space of ten years to the family.

Ten years are to elapse, before the children, though of age, can receive, and ten years before the grandson's share can be placed on interest.

The will fixes one period for the distribution of this residue, the codicil one ten years later.

Nothing indicates an intention to prefer the grandson, or change the proportions bequeathed, but the contrary ; for the codicil itself requires the division to be " *as specified* in the will."

Consequently the fund was to be ascertained, its *use* for ten years was to be specifically appropriated, and then and not till *then*, that *residue* was to be divided, and divided in *the precise* proportions specified in the will.

To give the grandson interest for ten years, would free his tenth from the incumbrances of ten years use, indicated by the codicil — would give him one tenth *plus* ten years interest.

If the grandson were entitled to his interest it must neces-

sarily come from the *residuary* legatees under this clause, who must *pro rata* contribute, for the residuary legatees have no right to call upon the specific legatees, nor diminish the *ten years use* of this fund by charging it with interest.

It is manifest therefore, that Joseph is not entitled to interest till after lapse of the ten years specified in the codicil.

*Hinckley*, for the appellee.

By applying the rules of interpretation, the legacy to Jos. P. Lovering is not affected by the codicil.

1st. It is always presumed, that the testator uses the words which he employs, according to their strict and primary meaning.

2d. When there is nothing in the context of the will, from which it is apparent, that a testator has used the words, in any other than their strict and primary sense, and where his words, so interpreted, are sensible with reference to extrinsic circumstances, it is an inflexible rule of construction, that the words shall be interpreted in their strict and primary sense, and in no other, although they may be capable of some popular or secondary interpretation, and though the most conclusive evidence of intention to use them in such popular or secondary sense be tendered. Wigram on Wills, 11; 1 Greenl. Ev. sect. 287.

The words of the testator interpreted in their strict and primary meaning are sensible, with reference to the extrinsic circumstances, without resorting to any popular or secondary meaning of the word "children," used in the codicil.

The primary meaning of the word "children," used in the codicil, does not include grandchildren. *Comer* v. *Pinckney & als.* 3 Barbour's Ch. R. 466.

The testator having directed the legacy to be paid in a specified time after his death, with interest, it became due or a charge on the estate at the testator's death.

Though payment was to be delayed, interest must have been intended from that time.

SHEPLEY, C. J. — The rights of the parties depend upon a

correct construction of the will of Daniel Faulkner. It was evidently drawn by a person not learned in the law.

The residuary clause would seem to be inconsistent with the devise of all his real and personal estate to his son Daniel, after the decease or marriage of his widow, unless the phrase "personal estate" be so restricted as to include only the tangible personal property of the testator. Whether the devise to Daniel became operative, so that this question would be presented, and if so, how it has been settled does not appear.

The only question presented is, whether Joseph P. Lovering is entitled to interest upon his tenth part of the residue, since the decease of the testator. This must be determined by the intention of the testator, to be ascertained from the context of the will and codicil.

He appears to have had two sons and three daughters. So far as he intended to provide for them specially or unequally, he has done so otherwise than by the residuary clause. The intention is clearly perceived to divide the residue equally among them and their children. This is accomplished by the language used in the original will, by which one fifth part is bequeathed to each son and daughter with the single exception, that the fifth designed for the benefit of his daughter Lovering is equally divided between her and her son Joseph.

The legacies from the residue would become payable as soon as the estate was settled. The payment of the tenth to Joseph being postponed until he became twenty-one years of age, it became necessary to keep up the equality to make it payable, as it was, with interest.

By the codicil he makes a change respecting the disposition of the residue, and declares, that it, or upon one construction a part of it, shall remain for the use of his beloved family for the space of ten years after his decease. He speaks of it as follows : " all the residue of my personal property, after my funeral charges and just debts are paid, which in my last will and testament I have directed to be divided among my several children, after which time it shall be divided as specified in my last will and testament."

The purpose of the codicil appears to have been to preserve the residue undivided for ten years, for the common benefit of his family, not to make any further alteration in the disposition of it. This is manifest by the use of the language " it shall be divided as specified in my last will and testament."

This language shows, that the manner, in which it was to be divided after the lapse of the ten years, was presented to his mind, and that he referred to the former disposition, instead of making any new or different one.

By the word family he doubtless intended his widow and children. If he did not intend to include the whole residue in that bequest to his family, the effect would be to make a very material change in the equality designed by the original will. The one tenth bequeathed to Joseph would be accumulating for ten years, while his mother would be receiving a benefit equal to that received by her brothers and sisters from the other nine tenths. The equality would be thus destroyed by the reception of the income by the mother, of one fifth instead of one ninth of the nine tenths, while her son's tenth was also accumulating.

There is no indication in the codicil of an intention thus to disturb the equality established by the original will, unless it appears from the latter clause used to describe the residue. That it was used to describe that residue, and not to make a bequest of it, is most apparent. It is not, therefore, a bequest or devise to children, which it is proposed so to enlarge as to admit a grandchild. This would be inadmissible.

If, in describing the residue, it was not the intention to include the whole of it, it is not reasonable to conclude, that he would have used the words "all the residue," instead of that part of the residue, or all that part of it. If the intention to distribute the residue unequally, was then upon the mind of the testator, it may be presumed, it would have been exhibited by the use of some language designed to make it known, instead of a clause of reference to the original will, for such division.

If no such intention was upon the mind, the language used

to describe that residue is not very extraordinary, when it describes it as the residue, which in my last will I have directed to be divided among my children. He might consider, that he had so directed it to be divided, when it was to be divided for their benefit, and that of their children.

A testator is presumed to have used words in their ordinary meaning, unless such a construction would be in conflict with his manifest intention. The use of the word "children" does not necessarily and under all circumstances exclude a grandchild. Grandchildren will not be considered as included in the term unless such intention is clearly exhibited, or the word appears to have been used as synonymous with issue or descendants. 2 Jarman on Wills, chap. 38 ; Wigram's Prop. 1 ; *Radcliffe* v. *Buckley,* 10 Ves. 195 ; *Izard* v. *Izard's Ex.* 2 Desau. 303 ; *Mowatt* v. *Carow,* 7 Paige, 328 ; *Tier* v. *Pennell,* 1 Edw. 354 ; *Ewing's Heirs* v. *Hanly's Ex.* 4 Litt. 349 ; *Cromer* v. *Pinckney,* 3 Barb. Chancery, 466.

All difficulty respecting the interpretation of the word children disappears, when it is considered, that the clause, in which it is found, was not used to designate the legatees or to determine how the residue should be distributed, but to describe the fund to be bequeathed. It then becomes only at most, a mis-description of it in part.

The whole residue being then appropriated by the codicil to the use of his family for ten years after his decease, it could not have been his intention to have the interest accumulate on the tenth bequeathed to his grandson during that time. The executor could have no fund from which an interest could be obtained. The income of the whole residue was to be so disposed of, that there could be no accumulation of interest. To allow interest to Joseph from the death of the testator would be inconsistent with the disposition of the residue for ten years by the codicil, and it would violate the equality which the testator intended to establish and preserve.

The decree of the court of probate is reversed ; and it is ordered, adjudged and decreed, that the legacy payable to Jos.

P. Lovering be paid to him with interest, commencing ten years after the death of the testator, and that the costs of the administrator be paid to him out of the fund, and that the case be remanded to the court of probate for further proceedings.