## Case No. 7,138.
JACKSON v. KIP.
[2 Paine, 366.] [1]
Circuit Court, S. D. New York.[2]

[1] [Reported by Elijah Paine. Jr., Esq.]
[2] [The date is not given. 2 Paine includes cases decided from 1827 to 1840.

THOMPSON, Circuit Justice. The question in this case arises under the will of Jacobus Kip. dated 30th August, 1770, and a codicil thereto, dated 15th of January, 1772. The testator, when his will was made, had five children, Samuel, John, Catharine, Mary and Margaret; and by his will he devised a specific part of his farm at Kip's Bay. to each of his sons; and to his three daughters he devised another specific part, to them. their heirs and assigns forever, share and share alike as tenants in common. And then adds this clause: "Then I give, devise. and bequeath. all the rest, residue and remainder of my estate. real and personal. unto my said two sons, Samuel and John, and to my

said daughters, Catharine. Mary and Margaret, to have and to hold the same to them, their heirs and assigns forever, share and share alike as tenants in common, and not as joint tenants." And after charging the said residue of his estate with the maintenance of his sister, he adds: "It is my will that in case either or any of my said daughters shall die without leaving lawful issue of their bodies, that then and in such case the part, share and proportion of my estate hereinbefore ·devised to such daughter or daughters so dying, shall belong to, and be enjoyed, by my surviving children in fee simple." The premises in question are about eight acres of the residuary part of the estate. Catharine Teller, one of the daughters, died in the year 1771, in the lifetime of the testator; who thereupon added a codicil to his will, by which he devised in fee to his grand-daughter, Catharine Teller, the only child of his deceased daughter Catharine, that part, share and proportion of his estate which had been by his will devised to her mother, and then adds: "But in case my said grand-daughter, Catharine, should die without lawful issue of her body then living, then and in such case I give, devise and bequeath the part, share and proportion of my estate hereinbefore devised to her, to and among my surviving children or their lawful representatives, share and share alike." The testator died in October, 1777, leaving his two sons and two daughters, Mary and Margaret, and grand-daughter alive. Catharine Teller, the grand-daughter, died in July, 1824, intestate, and without ever having been married. John died in 1777, after the testator, and without issue. Mary Kip died in the year 1780, intestate and without issue. Samuel was the eldest son, and died intestate in the year 1804, leaving eight children, of whom the lessor of the plaintiff was the eldest son, and the defendant one of his brothers. Margaret survived all her brothers and sisters, and died intestate and without issue, in the year 1809.

Upon this statement of facts it is contended, on the part of the plaintiff, that if the executory devise in the codicil is valid and effectual, that James S. Kip, the lessor of the plaintiff, is entitled to the whole portion of the estate devised over, upon the death of the grand-daughter, Catharine Teller, without lawful issue of her body then living. But if the executory devise does not vest exclusively in James S. Kip, it is void for uncertainty, and that he is entitled to the whole of this portion of the estate as heir to Jacobus Kip, he being, as is contended, the person last seized. On the part of the defendant it is contended, either that the estate devised by the codicil to Catharine Teller, the grand-daughter, was a fee-simple absolute, and passed by her deed to Samuel Jones, junior, and Nicholas W. Stuyvesant, (found in the special verdict,) or that if she did not take an estate in fee-simple absolute, then upon her decease it vested in the children of Samuel; and if so, according to the facts found in the special verdict, the plaintiff cannot recover, the premises in question having been on the partition set off to Samuel Jones, junior, and N. W. Stuyvesant, as trustees, as in the partition mentioned for all the children of Samuel Kip; and the lessor of the plaintiff having already in possession one-eighth, as found by the special verdict. That the intention of the testator, where it can be satisfactorily discovered, is to be carried into effect, when it can be done consistently with the rules of law, has been so often laid down as a governing rule in the construction of wills, that a reference to authorities to establish it is entirely unnecessary.[3] And in applying this rule, the intention is to be collected from the whole will, and not from detached parts; and effect must be given to all the words in the will without rejecting or controlling any of them, if it can be done by a reasonable construction not inconsistent with the manifest intent of the testator. When any technical words are used, the meaning of which has been settled by usage, and sanctioned by judicial decisions, they are presumed to be used in the sense the law has appropriated to them, and must have their technical effect, unless a contrary intention is manifest; but when such intention is plain, it will control the legal operation of words, however technical. These are some of the rules which have been adopted and sanctioned by courts in the construction of wills, and in the application of the cardinal rule to seek for the intention, and which may have a bearing on the construction of the will in question.

The premises in question falling within that portion of the estate which is embraced by the residuary clause in the will, and which in the codicil is devised to the grand-daughter, Catharine Teller, the first inquiry is, what estate she took under this devise. If, as contended on the part of the defendant in one branch of the argument, she took a fee-simple absolute, her estate passed by the deed to Jones and Stuyvesant, and the plaintiff can have no right to recover. If this construction of the devise is to prevail, it must be either because the executory devise over has failed for want of an executory devisee answering the description in the codicil, and resting on the construction that the executory devisees were the children of the testator who survived his grand-daughter, Catharine, and they all having died before the grand-daughter, there was no executory devisee, and the fee became absolute in her; or that Margaret, as the survivor of the children, took the estate as executory devisee, and which passed under her deed to Jones and Stuyvesant. But this construction necessarily involves a rejection of the words, "or their lawful representatives share and share

---

[3] [See note at end of case.]

alike," which is inadmissible unless there is an irreconcilable uncertainty or repugnancy in the disposition made of the property. And there is no such uncertainty, in my opinion, as to warrant a rejection of these words; nor can the devise over be considered as vesting the estate in fee-simple absolute, in Margaret the survivor of the four children, for this would require the rejection of the tenancy in common, created by the words share and share alike. There can be no doubt but that where there is a lapsed devise, for the want of a devisee answering the description in the will, or where there is an irreconcilable repugnancy or uncertainty in the disposition made by the testator, so that his real intention cannot be ascertained, the estate will descend to the heir-at-law (Penn. Dec. 411); but a devise is never construed absolutely void for uncertainty, but from necessity. If there is a possibility to reduce it to certainty, the devise is held good; so that the intention of the testator may be carried into effect ut res magis valeat. This rule prevails both in courts of law and equity. Pyot v. Pyot, 1 Ves. Sr. 336. And I cannot think there is such uncertainty in this devise as to warrant the conclusion that it must be set aside as void, and the heir-at-law let in, on that ground, to take the estate. It is, I think, a valid executory devise. It has all the requisites to constitute such a devise, and which was to take effect upon the contingency of Catharine Teller, the granddaughter, dying without issue living at the time of her death. Upon that event, which has occurred, the devise over is to the surviving children of the testator, or their lawful representatives, share and share alike; and, according to my view of the case, the question must turn upon the construction to be given to the words "lawful representatives," as here used.

On the part of the plaintiff it is contended, that the term "representatives" is to be construed "heirs," and its application to be governed by the rule of law existing at the date of the will (1770); and according to this construction, the estate will vest in J. S. Kip, the lessor of the plaintiff. On the other side it is contended, that these are words of purchase, and merely descriptive of the persons who were to take the estate; and that this designation must be applied to persons answering that description when the contingency happened, which was on the death of the grand-daughter Catharine, in the year 1824, at which time all the children of Samuel Kip were his lawful representatives, within the sense and meaning of the devise.

The term "representative," when applied in the way here used, has not acquired any fixed technical meaning, nor have any judicial decisions been referred to which have given to it a settled and definite interpretation. It can, therefore, be considered only a word of description, and to be so construed as will best comport with the fair and reasonable intention of the testator. Any words of description, by which the devisee may be known and ascertained, are sufficient. 6 Term R. 679. In the case of Counden v. Clerke, Hob. 33, a devise to the stock, family, or house of A., held good, and the heir was considered the person intended, in order to effectuate the intention of the testator. So a devise to A.'s oldest son is good, though called William, when his name was Andrew. 7 East, 799. So grandchildren may take under the description of "children," when it is clear, from the whole clause in the will, that the intention was to include the issue of those who should be dead. Royle v. Hamilton, 4 Ves. 437. So in the case of Goodright v. White, 2 W. Bl. 1010 (4 Dana, 516; 6 Cruise, Dig. 186; 4 Ed. 481), the devise was to the heirs of Margaret White, jointly and severally, and their heirs and assigns forever; the court held the devise good; and that Margaret's son took as a purchaser in her lifetime, although it was objected that nemo est heres viventis; that this was a good description of the person intended, to make the son of Margaret take, as her heir, living the mother; and the court observed, that this, though bad two centuries ago, had been good for a century past; that latterly, words had been taken in their popular sense; that the testator noticed that Margaret was alive, and meant a present interest should vest in her heir—that is, her heir apparent—during her life. 4 Dana, 598, § 29. These are some few among the numerous cases in the books, to show how far the court will go to effectuate the intention of the testator.

Devises are held void for want of certain description of the devisee, only in very strong cases, as in Doe v. Joinville, 3 East, 172 (4 Dana, 597), where the testator devised the half of certain lands to his wife's family, and the other half to his brother's and sister's family, and the testator had two sisters' families, and it was altogether uncertain which was intended. A devise will generally be held void for the uncertainty of the devisee, when the description cannot come within the rule of certum est quod potest reddi certum.

It is not necessary, in this case, to say at what point of time you are to look for the interpretation of words, whether the date of the will, the death of the testator, or when the estate devised vests. If the words used have a fixed technical meaning, or the devise is in terms immediate, so that the testator may be presumed to have had in view particular persons, the date of the will, or the death of the testator, may, perhaps, be the proper time to look, in giving a construction of the will. But it is by no means certain that such should be the rule, where the estate is to vest upon some future unknown and uncertain contingency; if in such case the description of the persons who are to take is general, it may be quite as likely to carry into effect the intention of the testator, to

apply that description to persons coming within it at the time the contingency happens. 1 Ball & B. 449; Hom. Dig. 705. But to whatever period we look, in construing this devise, it must, in my judgment, receive the same interpretation as if the testator had used the word "children" instead of "representatives." The codicil, upon its face, and the occurrence which called for the making of it, show very satisfactorily that it was the intention of the testator to provide for his grandchildren as well as his children. The codicil he declares to be made for the purpose of making his intention, in his will, more manifest with respect to the devise to his daughter Catharine, and thereby to secure it to his grand-daughters, if she should die leaving lawful issue. When, therefore, he provides for the contingency of the grand-daughter dying without issue, and on that event devises it to his surviving children, or "their lawful representatives," it is reasonable to conclude he intended, as to this part of his estate, to substitute, in place of their parent, the children of any other of his sons or daughters who should die leaving any such children; and if such was his object, the term "representatives" is very appropriately used for the purpose of substituting the children in the place of their deceased parent; and this word being used in the plural number, and the creation of a tenancy in common by the words "share and share alike," show that more than one was intended to be embraced within it, and, of course, that no reference could have been had to the heir-at-law, to the exclusion of others falling within the description of "representatives," although the word "or" may be read "and" when it becomes necessary, for the purpose of carrying into effect the clear and obvious intention of the testator. But this does not appear to me to be such a case, but that the substitution of "and" for "or" would tend rather to obscure than elucidate: and, indeed, the change of "or" into "and" would involve an obvious incongruity in the reading, "Among my surviving children and their lawful representatives." But if the word "representatives" means "children," as I think it does, it is immaterial to what period the word "surviving" refers; for whether to the date of the will, the death of the testator, or the happening of the contingency, the estate would go either to the surviving children, if all were living, or to such as were living, and the representatives of such as were dead. And such, I think, is the construction to be given to this codicil. It is very clear, from the general scope of the will and codicil, that the testator intended to dispose of his whole estate under the various provisions of his will, and not leave any part of it to vest under the general rules of descent.

It seemed to be admitted at the bar, and indeed could not be questioned, that if this had been a bequest of personal property, the word "representatives" would have embraced all the children of Samuel Kip, and go according to the statute of distribution; and the residuary clause to which the codicil refers, embraces both real and personal estate, and the testator used the words "give, devise and bequeath," which properly apply to both real and personal property, which affords a pretty fair inference that the word, "representatives" was used in reference to both species of property indiscriminately, in its general and popular sense, without any technical application to real property.

Much stress was laid, in the argument, upon the word "lawful," as indicating an intention to qualify the term "representatives," and affix to it the interpretation of "heir-at-law." This, however, does not appear to me to be a fair and reasonable construction. If such had been the intention of the testator, it would have been a much more natural and easy form of expression to have said "heir-at-law." But it is, I think, very evident that the term "lawful" is here intended to be used in the same sense as "legitimate." Upon the whole, then, I have arrived at the conclusion that this is a good executory devise, depending on the contingency of Catharine, the granddaughter, dying without lawful issue living at the time of her death; that this event having occurred, the executory devise took effect; and that the executory devisees named and intended were such of his children as should be then living, and the children of such as should be dead. And all his children having died without leaving children, except Samuel, all his children became the executory devisees, share and share alike as tenants in common, which, according to the finding of the jury in the special verdict, will require judgment to be entered for the defendant.