**BRADLEY v. GILLIAM et al.   (No. 9067.)**

(Court of Civil Appeals of Texas. Dallas. March 8, 1924. Rehearing Denied April 5, 1924.)

**1. Husband and wife ⬅️65—Abandoned wife held authorized to contract for legal services for son.**

Where there exists a permanent separation between husband and wife, the wife is clothed with power to bind her separate estate by a contract for legal services to be rendered her son, notwithstanding Vernon's Ann. Civ. St. Supp. 1922, art. 4621, prescribing conditions under which a wife may contract.

**2. Husband and wife ⬅️83—Legal services for "children" held "necessaries" for which mother might contract.**

A fee agreed to be paid by a wife permanently separated from her husband for necessary legal services rendered her son, jailed under charges of rape and kidnapping, to enable him to procure bail, held one for "necessaries," notwithstanding that the son was not a minor. Vernon's Ann. Civ. St. Supp. 1922, arts. 4621 and 4624, not restricting a mother's power to contract for necessaries to minors or

infants; the term "children" including children of whatever age and whether constituents of the family or not.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Child—Children; Necessaries (for Infants).]

**3. Statutes ⬉185—Exceptions will not be supplied by implication or merely because good reason therefor might be found.**

Exceptions will not be ingrafted on statutes by implication or merely because good reason might be found for adding them.

**4. Attorney and client ⬉143—Entire contract for services vitiated by illegality of part thereof.**

Although an attorney may in representing his client render services perfectly legal and proper, yet if such services are intermingled with others that tend to suppress legal investigations of crime, or to defeat the finding of an indictment by a grand jury, or such as would render him amenable under Pen. Code 1911, art. 191, the contract for services as a whole is vitiated.

Error from Dallas County Court at Law; T. A. Work, Judge.

Action by S. M. Bradley against R. L. Gilliam and others, in the court of a justice of the peace. Judgment for defendants, and plaintiff brings error. Affirmed in part, and reversed and remanded in part.

J. L. Zumwalt, of Dallas, for plaintiff in error.

Andrew J. Priest and Roy C. Ledbetter, both of Dallas, for defendants in error.

LOONEY, J. S. M. Bradley, plaintiff in error, filed suit in the justice of the peace court, precinct No. 1, Denton county, Tex., to recover from Mrs. M. C. Yates, J. W. Yates, and Roy Gilliam, defendants in error, the sum of $200, alleged to be the reasonable value of legal services rendered by plaintiff at the instance of defendants for Roy Gilliam, who was at the time confined in the county jail of Denton county on two criminal charges, rape and kidnapping.

The case was removed on change of venue to the justice of the peace court of precinct No. 1, Dallas county, where Bradley was defeated, and, on appeal to the county court at law, he was again defeated. The case is properly before us on writ of error.

Plaintiff stated his cause of action in writing substantially as follows: That Roy Gilliam, an adult son of Mrs. Yates, was on June 10, 1920, confined in the county jail of Denton county on two criminal charges, rape and kidnapping; that his mother, Mrs. Yates, employed plaintiff, a practicing attorney at Denton, Texas, to represent her son in securing bail, agreeing to pay the reasonable value of these services, and that Roy Gilliam also agreed to pay plaintiff the reasonable value of such services. That plaintiff immediately

interested himself in behalf of Gilliam, secured an agreement from the county attorney that defendant might be admitted to bail in the sum of $1,000 in each case, but, for some reason, the bonds were never executed. That Mrs. Yates and Gilliam, against his advice, insisted upon and caused plaintiff to demand and bring on an examining trial before the magistrate at Pilot Point, which resulted in Gilliam being remanded without bail. Afterward, and at the instance and request of Mrs. Yates and Gilliam, plaintiff made application for, and procured, a writ of habeas corpus hearing before the district judge, which resulted in Gilliam being admitted to bail in the sum of $1,000 in the rape case and discharged in the kidnapping case.

Plaintiff alleged that in the performance of these various services he made many trips, interviewed witnesses, and expended money. He further alleged that at the time Mrs. M. C. Yates and her husband, J. W. Yates, were living apart and permanently separated, that she was residing and conducting, on her own behalf, a boarding house establishment in the city of Dallas, Tex., and that Yates resided in the state of Oklahoma.

It was alleged that Roy Gilliam was an adult and, at the time, an inmate of his mother's family. It was further alleged that the services rendered and expenses incurred by plaintiff in representing Gilliam were reasonably worth the sum of $200, for which the suit was brought.

In plaintiff's written statement he admitted that he was not entitled to recover anything against the defendant J. W. Yates, although for some reason Yates is made a party to these proceedings.

Mrs. Yates urged a general exception to plaintiff's petition, on the ground that it did not allege such a contract as a married woman could enter into and bind herself. The trial court sustained the exception and dismissed Mrs. Yates from the suit. Plaintiff in error assigns error on this action of the court.

[1] It is our opinion that the assignment of error is well taken. The allegations of plaintiff's petition show that Mrs. Yates and her husband were permanently separated. It is the settled law of this state that where there exists a permanent separation between husband and wife, the wife is clothed with power to contract. She is by reason of the abandonment thrown on her own resources and, unless accorded the freedom of contract, would be defenseless against the many demands and responsibilities with which she will inevitably be confronted.

In the case of Davis v. Saladee, 57 Tex. 326, the wife had been living apart from her husband about two years when she executed the note sued on. The court held that she

⬉For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

was liable and used, among other, the following language:

"If, as in this case, the separation of husband and wife is permanent, the circumstances of such separation would be immaterial on a question of her power to bind her separate property by contract. In such a case, whether the husband has abandoned the wife, or the wife abandoned the husband, is a matter of no consequence. If the separation is final, she has full power over her separate property, and to contract respecting the same. * * * Under the facts of this case, we are of the opinion that the note was binding upon Mrs. Saladee, and that her separate property was bound for the same."

The courts adhere to this doctrine. In Heagy v. Kastner (Tex. Civ. App.) 138 S. W. 788, the court said:

"But, when he abandons her and willfully fails or neglects to discharge those obligations which nature and the law have placed upon him, and the mantle of protection in which the law clothed the wife must be cast aside to enable her to discharge those duties * * * which the husband has ignored and shown himself recreant, the law as fully manumits the wife as though no husband had ever clasped her hand to brighten or darken her life. She may, in such case, enter into contracts, and the right to make them carries with it the right to enforce them without joining the recreant husband with her in a suit for that purpose."

It is insisted by appellee, however, that, although abandoned, the wife is not thereby empowered to contract, except as she does so in compliance with the conditions prescribed in article 4621, Vernon's 1922 Supp. On the point under consideration, this statute reads as follows:

"During marriage * * * the wife shall have the sole management, control and disposition of her separate property, both real and personal; provided however, the joinder of the husband in the manner now provided by law for conveyances of the separate real estate of the wife shall be necessary to the incumbrance or conveyance by the wife of her lands, and the joint signature of the husband and wife shall be necessary to the transfer of stocks and bonds belonging to her, or in which she may be given control by this act; provided also that if the husband shall have permanently abandoned his wife, be insane, or shall refuse to join in such incumbrance, conveyance or transfer of such property, the wife may apply to the district court of the county of her residence, and it shall be the duty of the court, in term time or vacation, upon satisfactory proof that such incumbrance, conveyance or transfer would be advantageous to the interest of the wife to make an order granting her permission to make such incumbrance conveyance or transfer without the joinder of her husband in which event she may incumber, convey or transfer said property without such joinder."

This statute will not be enlarged so as to include subjects neither within its express or implied terms. When, therefore, and with reference to what subjects, must the wife be granted permission by the court to contract? The statute answers: It is when the husband shall have permanently abandoned his wife, or is insane, or refuses to join in "such incumbrances, conveyances or transfers of such property." The subjects of the contract dealt with by this statute are the separate real estate and the stocks and bonds belonging to the wife.

The power of an abandoned wife to contract and bind herself for the payment of reasonable attorney's fees for the defense of her son is in no manner restricted by the statute; in fact, the statute was not intended to include other than the subjects named.

In construing this statute, the San Antonio Court of Civil Appeals, in Cromer v. Schafer, 250 S. W. 444, held that a wife permanently abandoned by her husband was without power to give a valid mechanic's lien on her separate real estate in the absence of an order by the district court permitting her so to do. We find no fault with the construction given the statute by the San Antonio court; the same is not in conflict with our holding in the instant case, for the reason that the statute in question has no application to the contract under consideration.

[2] Aside from the question of abandonment, we are of the opinion that the fee agreed to be paid by the mother for necessary legal services rendered her son, incarcerated in jail under two serious criminal charges, was for "necessaries" within the meaning of the statute.

Legal services rendered the wife in a divorce proceeding, brought in good faith and on probable grounds, was held to be recoverable from the husband as necessaries furnished the wife within the contemplation of article 4624 (old article 2970) Revised Statutes. Bord v. Stubbs, 22 Tex. Civ. App. 242, 54 S. W. 633.

The Supreme Court, in Searcy v. Hunter, 81 Tex. 647, 17 S. W. 372, 26 Am. St. Rep. 837, held that legal services rendered a minor in a lawsuit involving her interest in lands were for "necessaries," and, with reference thereto, the court used the following language:

"For 'necessaries' furnished an infant the law implies a contract. These are usually food, lodging, wearing apparel, medicine, medical attendance, and the means of an education. Such is the more rigid rule of the common law. But there are cases which recognize that fees of attorneys for services rendered infants may under some circumstances be treated as 'necessaries' for the payment of which the law will imply a contract"—citing Epperson v. Nugent, 57 Miss. 45, 34 Am. St. Rep. 434; Thrall v. Wright, 38 Vt. 494; Hall v. Butterfield, 59 N. H. 354, 47 Am. Rep. 209.

In the following instances attorney's fees for services rendered were held "necessa-

ries": For the prosecution of a suit for damages for breach of a promise of marriage (Munson v. Washband, 31 Conn. 303, 83 Am. Dec. 151); for defending an infant in a bastardy proceeding (Barker v. Hibbard, 54 N. H. 539, 20 Am. Rep. 160); in an action for damages for assault (Crafts v. Carr, 24 R. I. 397, 53 Atl. 275, 60 L. R. A. 128, 96 Am. St. Rep. 721). Beneficial services rendered minors by attorneys are classed as "necessaries." Sutton v. Heinzle, 84 Kan. 756, 115 Pac. 560, 34 L. R. A. (N. S.) 238; McIsaac v. Adams, 190 Mass. 117, 76 N. E. 654, 112 Am. St. Rep. 321, 5 Ann. Cas. 729.

In view of these decisions from our own courts, as well as from the courts generally, there can be no doubt that attorney fees are classed as "necessaries."

As regards the power of the wife to contract for necessaries for herself and children, the following statutes are pertinent:

The concluding paragraph of article 4621, Vernon's 1922 Supp., is as follows:

"The community property of the husband and wife shall not be liable for debts or damages resulting from contracts of the wife, except for necessaries furnished herself and children, unless the husband joins in the execution of the contract, provided, that her rights with reference to the community property on permanent abandonment by the husband shall not be affected by the preceding sentence."

Article 4624, Vernon Sayles, reads as follows:

"Neither the separate property of the husband nor the community property other than the personal earnings of the wife, and the income, rents and revenues from her separate property shall be subject to the payments of debts contracted by the wife, except those contracted for necessaries furnished her or her children."

It will be noted that the wife's power to contract for necessaries for herself and children is not restricted to minors or infants. The term "children" includes all children of whatever age and whether constituents of the family or not. Hollingsworth v. Hollingsworth's Ex'rs, 65 Ala. 321. The term "children" in wills includes all immediate descendants, adults, and infants, and in a number of instances the term has been held to include grandchildren as well. McKeehan v. Wilson, 53 Pa. 74; In re Goble's Will (N. Y. Sur.) 10 N. Y. Supp. 18; Osgood v. Lovering, 33 Me. 464; Heyward v. Hasell, 2 S. C. (2 Rich.) 509; In re Fisher's Estate, 13 Phila. (Pa.) 401; Ewing's Heirs v. Handley's Ex'rs, 14 Ky. (4 Litt.) 346, 14 Am. Dec. 140; Jackson v. Kip, 13 Fed. Cas. 220; Palmer v. Horn, 20 Hun (N. Y.) 70; Den ex dem. Weatherhead v. Baskerville, 52 U. S. (11 How.) 329, 13 L. Ed. 717; 1 Bouvier's Law Dictionary (3d Rev.) 479.

It is generally held that there exists a legal duty upon parents to supply their minor children with necessaries, and it is also generally held that there does not exist any other than a moral obligation to supply necessaries to their adult children. However, the moral obligation is a sufficient consideration for an agreement on the part of parents to furnish necessaries to their adult children. The wife, under the statutes of this state, is authorized to contract for necessaries to be furnished her children, without reference to whether or not they are minors or inmates of her family. This doctrine is recognized in Rogers on Domestic Relations in section 494, in which the law is stated as follows:

"The duty of support by the parent ceases absolutely upon the arrival of the child at majority * * * but while the legal duty of the parent to support his child ends with the majority of the infant, he will nevertheless be liable for any necessaries furnished his adult child at his express or implied request."

See Porter v. Powell, 79 Iowa, 151, 44 N. W. 295, 7 L. R. A. 176, 18 Am. St. Rep. 353.

The rule is stated in 29 Cyc. 1612, as follows:

"In the absence of statute, a parent is under no legal obligation to support an adult child; but the legal liability for the support of the child ceases when it reaches the age of majority, unless the child is in such a feeble and dependent condition, physically or mentally, as to be unable to support itself. * * * The parent is not bound to pay for necessaries furnished to an adult child in the absence of any express or implied contract to pay; but the parent may, of course, become liable by contract to pay for the support of or necessaries furnished to an adult child."

With reference to the power of the wife to contract debts for necessaries furnished a child, the Supreme Court, in Whitney Hdwe. Co. v. McMahan, 111 Tex. 242, 231 S. W. 694, used this language:

"The act of March 13, 1848, empowered her to contract debts for necessaries furnished herself and children. * * * Prior to 1913 there was no other statutory grant of power to the wife to bind herself personally by contract. * * * The act [1913] contained words which seem to have continued the wife's statutory obligation" to contract "for necessaries furnished herself and children"—citing Ellis v. Blum (Tex. Civ. App.) 242 S. W. 1100.

The power of the wife to contract for necessaries, as above stated, is not limited to minor children, or to children who are members of the family, but is a general power. To hold that the power to supply necessaries to her children does not include an adult son in dire distress would be to create an exception not authorized by any language of the statutes:

[3] It is a settled rule of statutory construction that exceptions will not be ingrafted on statutes by implication or merely be-

cause good reason might be found for adding them. Spears v. San Antonio, 110 Tex. 625, 223 S. W. 166; Wallace v. Stephens, 74 Tex. 560, 12 S. W. 283; Laughter v. Seela, 59 Tex. 186.

For these reasons, we are of the opinion that the court erred in sustaining the general demurrer to the plaintiff's petition, and in dismissing Mrs. Yates from the suit.

Defendants in error contend, however, that the consideration for the attorney's fees was services to be rendered by plaintiff in error, in part at least, tending to suppress an investigation of the criminal charges against Roy Gilliam, and to prevent his indictment, and, therefore, the contract is against public policy and void. This contention is based on evidence furnished in certain letters written by plaintiff in error as follows:

On July 28, 1920, plaintiff in error wrote Mrs. M. C. Yates, in part, as follows:

"I had hoped that you could furnish a small amount so that I could come to Pilot Point and try to get some one interested in having these girls stay away from the court and not testify against these boys. That is about the best thing we can do but we cannot do this without paying for it. No one is willing to volunteer their services in a matter like this and, if we get any help, it will cost some money."

On August 2, 1920, plaintiff wrote Roy Gilliam in part as follows:

"The best course to pursue is to try and prevent an indictment for if you should be indicted you will be up against it."

On August 18, 1920, plaintiff in error wrote Roy Gilliam in part as follows:

"I had arranged with Sanders (the constable) to work with me in trying to prevent an indictment by the grand jury, but if I am to do this I will expect to have some understanding about a reasonable fee for my services."

Again on August 20, 1920, plaintiff in error wrote Roy Gilliam as follows:

"Since I wrote you I have seen Mr. Sanders (the constable) and he tells me that he thinks we can arrange to have the two girls go on a visit to Grayson county and be where they cannot be found when the grand jury meets, but if we get them to leave it will cost $50 or $75 to bear the expense."

Plaintiff in error also testified that Mrs. Yates gave him, at Pilot Point, a roll of bills, he did not know how much money, to be given to J. M. Sanders, the constable, and that he delivered the money to Sanders.

These excerpts from the letters written by plaintiff in error and this testimony show very conclusively that he was willing to engage in the enterprise of suppressing a legal investigation of the criminal charges against his client Gilliam, and to prevent an indictment. If plaintiff in error had succeeded in this enterprise, he and all those aiding or assisting would have made themselves amenable to the provision of article 191 of the Penal Code of this state.

[4] Although an attorney may, in representing his client, render services perfectly legal and proper, yet, if such services are intermingled with others that tend to suppress legal investigations of crime, or to defeat the finding of an indictment by the grand jury, the contract as a whole is vitiated. This rule is aptly stated in the case of Johnson v. McMillion, 178 Ky. 707, 199 S. W. 1072, L. R. A. 1918C, 244:

"If a part of the consideration for a promise is legal and valid and a part is illegal, can the promise be enforced to the extent of the legal consideration, and held invalid to the extent that the consideration is illegal? Can you * * * split up a single promise and divide its effects? This question is answered in 9 Cyc. 556, as follows: 'If any part of a single consideration for one or more promises be illegal, or if there are several considerations for one promise, some of which are legal and others illegal, the promise is wholly void, as it is impossible to say which part or which one of the considerations induced the promise.'"

Also, see 13 C. J. 449, 450; Jones v. Henderson, 189 Ky. 412, 225 S. W. 34, 20 A. L. R. 1471; 2 R. C. L. 1042, 1043.

As this case will be reversed, in view of another trial we refrain from discussing the facts. The case was not fully developed. Neither Mrs. Yates nor the defendant Gilliam took the witness stand. The plaintiff alone testified as to the contract of employment. His position in short was that he was employed to procure bail for Roy Gilliam and that when this was accomplished his employment ceased, and that both Mrs. Yates and Gilliam promised to pay the reasonable value of his services.

If this was the employment, and if these were the services to be rendered, unmixed with efforts to frustrate or defeat an investigation of the criminal charges or to prevent an indictment, the contract is enforceable. If, however, his undertaking was not only to procure bail for Gilliam, but also to prevent an orderly investigation of the criminal charges and defeat an indictment by the grand jury, if these were contemplated, the entire contract of employment is vitiated, and he cannot recover. These contentions, however, will present a question of fact to be determined on another trial.

We do not desire or intend that these expressions shall be used to the prejudice of plaintiff in error on a retrial of this case, yet, in view of the indisputable facts brought to our attention, we feel impelled to say that the willingness of plaintiff in error, and his evident attempt, to subvert the enforcement of the criminal laws of the state demand the severest condemnation. The lawyer who is true to his honorable profession and to the institutions of his country will

regard the laws of his state and her courts as ministries of justice. Such a lawyer will spurn the thought of plotting, counseling, or aiding in the evasion of the law's mandates in order that their penalties may be escaped.

The judgment of the court below will be affirmed as to J. W. Yates, and reversed and remanded as to the other defendants.

Affirmed in part, and reversed and remanded in part.